Slip Op. 05-131

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                             :

RON STEEN,                    :

                       :

       Plaintiff,       :

                       :        Before:       WALLACH, Judge

   v.                  :        Court No.:    04-00623

                       :

UNITED STATES,        :

                       :

       Defendant.   :

_____:

[Defendant's Motion to Dismiss for Failure to State A Claim Upon Which Relief May Be Granted is GRANTED.]

Decided: October 3, 2005

Steptoe & Johnson, (Joel D. Kaufman and Tina Potuto Kimble) for Plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director, David S. Silverbrand, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for Defendant.


**OPINION**

**I**
**Introduction**

    This case challenges the Department of Agriculture's ("Agriculture") definition of "net farm" or "net fishing" income pursuant to 19 U.S.C. § 2401e(a)(1)(C) (2004). On August 23, 2005, the court held oral argument on Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted ("Defendant's' Motion"). The Court has jurisdiction pursuant to 19 U.S.C. § 2395 (2005). For the following reasons Defendant's Motion is granted.

## II
## Background

On November 6, 2003, the Foreign Agricultural Service ("FAS") certified that Pacific Salmon fisherman in Alaska and Washington[1] were eligible to apply for agricultural trade adjustment assistance ("TAA") pursuant to 19 U.S.C. § 2401a.[2] Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 62,766 (November 6, 2003). On December 23, 2003 Plaintiff, Ron Steen, a Pacific salmon producer residing in Olympia, Washington, applied for TAA benefits. Complaint at 1; Plaintiff's Response to Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted at 3. Defendant, the United States Department of Agriculture ("Defendant" or "Agriculture") denied his application on the grounds that Plaintiff's net fishing income of $9,915 for 2002 was higher than his net fishing income of $4,573 for 2001. Defendant's Motion at 8. Plaintiff appealed Agriculture's denial to the National Appeals Division of the Department of Agriculture. Defendant's Motion at 4. Once Defendant notified Plaintiff that the denial was final, Plaintiff sought judicial review of Agriculture's determination on December 3, 2004. Id. at 4-5.

## III
## Arguments

---

[1] Defendant notes that the Oregon petition was not certified. Defendant's Reply in Support of Its Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted ("Defendant's Reply") at 14.

[2] This was the first step in a two-step process mandated by Congress for TAA eligibility. "First, pursuant to 19 U.S.C. § 2401a(a), '[a] petition for certification of eligibility to apply for adjustment assistance under this chapter may be filed with the Secretary by a group of agricultural commodity producers or by their duly authorized representative.' If the petition is approved, the producer must file an application for benefits pursuant to 19 U.S.C. § 2401e." Defendant's Motion at 1.

Defendant contends Plaintiff failed to state a claim upon which relief may be granted, and requests dismissal of this action arguing it properly denied Plaintiff TAA benefits because Plaintiff failed to meet eligibility requirements. Defendant's Motion at 6-7 (citing 19 U.S.C. § 2401e(a)(1) and 7 C.F.R. § 1580.301(e)(4)).  Specifically, Defendant claims that since Plaintiff has failed to demonstrate his net fishing income for the most recent year is not less than his net fishing income for the latest year in which no TAA assistance was received, he is ineligible for benefits and therefore fails to state a claim upon which relief may be granted. Id. at 9.

Plaintiff argues he has met the statutory requirements of 19 U.S.C. § 2401e(a)(1) and (b) and should therefore be eligible for TAA assistance. Plaintiff's Response at 5.  Plaintiff also argues that Defendant's regulations disregard Congress' statutory scheme and place additional requirements that conflict with the statute. Id.  Accordingly, Plaintiff asserts Defendant's decision to deny Plaintiff TAA assistance should be overturned.

**IV**
**Standard of Review**
**A**
**Defendant's Motion to Dismiss**

A Defendant is entitled to dismissal under USCIT Rule 12(b)(6) where, accepting factual allegations made in the Complaint and drawing all inferences in favor of Plaintiff, it appears beyond doubt that no set of facts can be proven that would entitle Plaintiff to relief. See Mitchell Arms, Inc. v. United States, 7 F.3d 212, 215 (Fed. Cir. 1993); Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1565 (Fed. Cir. 1988); United States v. Ford Motor Co., Slip Op. 05-24 at 5 (CIT Feb. 18, 2005); Kemet Electronics Corp. v. Barshefsky, 21 CIT 912,

976 F. Supp. 1012, 1027 (1997). In order to determine the sufficiency of a claim, consideration is limited to the facts stated on the face of the Complaint, or incorporated in it by reference. See Kemet at 1027. "On a motion to dismiss for failure to state a claim, any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." Amoco Oil Co. v. United States, 234 F.3d 1374, 1376 (Fed. Cir. 2000). Nevertheless, the "plaintiff must plead specific facts, and not merely conclusory allegations." Int'l Custom Prods. v. United States, Slip Op. 05-00341 2005 Ct. Int'l Trade LEXIS 74, 374 F. Supp. 2d 1311, 1323 (CIT June 15, 2005) (citing United States v. Inn Foods, Inc., 2003 Ct. Int'l Trade LEXIS 49, 264 F. Supp. 2d 1333, 1335 (CIT May 13, 2003).

**B**
**The General Standard of Review in Administrative Law**

In administrative proceedings, the court has jurisdiction to affirm or remand the actions of the Secretary of Agriculture "in whole or in part." 19 U.S.C. § 2395(c) (2004). The Department of Agriculture's determination regarding certification of eligibility for TAA will be upheld if it is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 2395(b); Former Employees of Swiss Indus. Abrasives v. United States, 17 CIT 945, 947, 830 F. Supp. 637, 639 (1993). In addition, the Administrative Procedures Act ("APA") provides that agency determinations shall be held invalid if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706 (2004). Under the latter standard, an agency's determination will be upheld unless the agency fails to acknowledge applicable law or to demonstrate how it reaches its conclusions of law. See Arizona Grocery Co., v. Atchison T. & S.F.R. Co., 284 U.S. 370, 389 (1932) (holding that an agency may not refuse to recognize its own

4

rules or regulations); <u>Burlington Truck Lines Co. v. United States</u>, 371 U.S. 156, 168, 83 S. Ct.

2039, 9 L. Ed. 2d 207 (1962) (holding that an agency finding must show "a rational connection

between the facts found and the choice made.")

**V**
**Discussion**
**A**
**Parties' Arguments**

Defendant contends Plaintiff's Complaint failed to state a claim upon which relief may be

granted. Defendant's Motion at 6. In particular, Defendant claims that Plaintiff does not meet the

eligibility requirements under 19 U.S.C. § 2401e or 7 C.F.R. § 1580.301.[3] <u>Id.</u> at 6-7. Defendant

---

[3] For an adversely affected agricultural commodity producer to be eligible to receive TAA benefits, 19 U.S.C. § 2401e(a)(1) states:

> Payment of adjustment assistance under this chapter shall be made to an adversely affected agricultural commodity producer covered by a certification under this chapter who files an application for such assistance within 90 days after the date on which the Secretary makes a determination and issues a certification of eligibility under [19 U.S.C. §24016], if the following conditions are met:

>> (A) The producer submits to the Secretary sufficient information to establish the amount of agricultural commodity covered by the application filed under this subsection that was produced by the producer in the most recent year.

>> (B) The producer certifies that the producer has not received cash benefits under any provision of this title other than this chapter.

>> (C) The producer's net farm income (as determined by the Secretary) for the most recent year <u>is less than the producer's net farm income for the latest year in which no adjustment assistance was received</u> by the producer under this chapter.

>> (D) The producer certifies that the producer has met with an Extension Service employee or agent to obtain, at no cost to the producer, information and technical assistance that will assist the producer in adjusting to import competition with respect to the adversely affected

5

says that while a producer may qualify for TAA assistance using either net farm or fishing income, the producer must to demonstrate that "net farm income (as determined by the Secretary) for the most recent year is *less than* . . . net farm income for the latest year in which no adjustment assistance was received . . . under this chapter." Id. at 7-8 (quoting 19 U.S.C. § 2401e(a)(1)(C)) (emphasis added); see also 7 C.F.R. § 1580.301(e)(4)) and 7 C.F.R. § 1580.102. Because Plaintiff's net fishing income was higher in 2002 than it was in 2001, Defendant says Plaintiff does not qualify for benefits under the TAA program.[4] Defendant's Motion at 8; Defendant's Reply at 1-2.

Plaintiff requests that the court deny Defendant's Motion to Dismiss and remand the instant case to the Secretary. Plaintiff claims that Defendant's regulations implementing the TAA statute and the agency's interpretation of the statute are unreasonable and contrary to Congressional intent. Plaintiff's Response at 1, 5. Plaintiff argues that he has met the statutory criteria set forth in 19 U.S.C. § 2401e(a)(1), that he does not fall within the limitations set forth

---

agricultural commodity.

\* \* \*

(emphasis added)

and, 7 C.F.R. § 1580.301(e)(4) states:

e) Producers able to furnish their applications with all the following certifications shall be eligible for adjustment assistance payments:

\* \* \*

(4) Certification that net farm or fishing income was less than that during the producer's pre-adjustment year.

[4] Defendant notes that Plaintiff does not dispute that his fishing income was higher in 2002 than it was in 2001. Defendant's Motion at 8 (quoting Complaint at 4).

in 19 U.S.C. § 2401e(b), and was denied TAA benefits erroneously. Id. at 5.

**B**

### The Department of Agriculture's Regulations Implementing 19 U.S.C. § 2401e Satisfy the Chevron and Mead Tests and Is Entitled to Judicial Deference

In determining whether an agency's interpretation and application of a statute is "in accordance with law," the court must undertake a two-step analysis prescribed by Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The first Chevron step is to determine whether "Congress has directly spoken to the precise question at issue." Id. at 842. Employing traditional tools of construction, the court first looks to the statutory text. See Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998). Because the "statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter." Timken Co. v. United States, 2001 CIT 96, 166 F. Supp. 2d 608, 614 (1996) (quoting Timex, 157 F.3d at 882). If however, further examination is needed, then the tools of statutory construction "'includ[ing] the statute's structure, canons of statutory construction, and legislative history'" must be reviewed. Id. (quoting Floral Trade Council v. United States, 99 CIT 10, 41 F. Supp. 2d 319, 323 n. 6 (1999).

After applying the first prong of Chevron, if the court determines that the statute is either silent or ambiguous with respect to the issue at hand, then the question becomes whether or not the agency's interpretation of the statute is permissible. Chevron 467 U.S. at 843. This inquiry focuses on the reasonableness of the agency's interpretation of the statute. "[A]dministrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the

7

force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226, 121 S. Ct. 2164, 2171, 150 L. Ed. 2d 292 (2001). Provided that Agriculture has acted reasonably and rationally in implementing the statute, the court may not substitute its judgment for the agency's. See Koyo Seiko Co. Ltd. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994).

A review of 19 U.S.C. § 2401e and its legislative history indicates that Congress did not clearly express an intent to limit the "net farm income" requirement solely to income derived from the adversely affected commodity. The pertinent statutory language, "net farm income (as determined by the Secretary [of Agriculture])," remained unchanged throughout the Congressional debate on the bill and amendments thereof. See generally 148 Cong. Rec. S4206 (2002), 148 Cong. Rec. H5888, H5892 (2002).

Congress left the definition of "net farm" and "net fishing" income solely to the discretion of the Secretary, although it made clear that the TAA program was intended to provide relief to agricultural producers who experienced great economic hardship as a result of import competition. See 19 U.S.C. § 2401e(a)(1)(C).[5] Contrary to Plaintiff's claims that the plain

---

[5] Congress' intent in creating the TAA program was to ensure that "[w]hen someone loses their job as a result of trade agreements entered into by the U.S. government, [Congress has] an obligation to assist these Americans in finding new employment." 147 Cong. Rec. S7957, S7967 (2001) (statement of Sen. Bingaman); see also 148 Cong. Rec. S4793, S4804 (2002) (statement of Sen. Murray). In particular, Congress wanted to amend the TAA program to "recognize the special circumstances faced by family farmers, ranchers and independent fishermen, and . . . to provide assistance and technical support before they lose their businesses." 148 Cong. Rec. S3530, S3536 (2002) (statement of Sen. Wellstone); see also 147 Cong. Rec. E2156, 2157 (2001) (statement of Rep. Bentsen). The legislative history and the language of 19 U.S.C. § 2401e support this purpose. See e.g. 148 Cong. Rec. at 7819; see also 19 U.S.C. § 2401e(a)(1) ("allowance shall be made to an *adversely affected agricultural commodity producer* covered by a certification under this part who files an application for such assistance within 90 days after the date on which the Secretary makes a determination and issues a certification of eligibility")

language of 19 U.S.C. § 2401e(a)(1) explicitly ties the eligibility of an agricultural producer *to the agricultural commodity at issue,*[6] the plain language of § 2401e(a)(1)(C) instructs the *Secretary* to determine the net farm income of any TAA applicant. 19 U.S.C. § 2401e(a)(1) (emphasis added).  If Congress had intended otherwise, it would not have inserted language in the statute specifically granting the Secretary of Agriculture the authority to determine "net farm income."  Congress could have explicitly inserted the language "net income from the *adversely affected agricultural commodity,*" as it did in § 2401e(a)(1)(A) and § 2401e(a)(1)(D). Defendant's Reply at 5-6, 11 (emphasis added) (quoting Terry v. Principi, 367 F. 3d 1291, 1296 (Fed. Cir. 2004)).  It chose to do otherwise.

Agriculture implemented the statute in accordance with Congressional intent.  Following notice and comment rulemaking[7] where parties' concerns were considered, Agriculture defined

_____

(emphasis added).

[6] Plaintiff argues that because Agriculture must first make a determination of group eligibility based upon whether or not a fisherman is adversely affected by imports of a specific type of fish, see 19 U.S.C. § 2401a(a), it therefore stands to reason that the individual fisherman's eligibility for TAA benefits must be tied to a loss in income from the adversely affected agricultural commodity and not based on a decline in net fishing income.  Defendant, however, correctly points out that TAA eligibility is a two-step process.  First, the group of fishermen must be certified as an adversely affected group pursuant to 19 U.S.C. § 2401a(a). Second, the affected fishermen must individually demonstrate that they suffered a loss in net fishing income as a result of increased imports. See 19 U.S.C. § 2401e(1)(C).  In no section of the statute does Congress tie the individual fisherman's eligibility to receive benefits to a demonstrable loss in income from a specific species of fish.  That determination is done on a group level at the first step of the process.

[7] The Foreign Agricultural Service ("FAS") proposed "Part 1580 - Trade Adjustment Assistance for Farmers," a rule to implement the Chapter 6 of Title II of the Trade Act of 1974, as amended by the Trade Act of 2002.  Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 39,478 (July 2, 2003).  Under the proposed rule, a group of agricultural commodity producers could petition the FAS for TAA.  Id. at 39,479.  If the FAS Administrator determined that "the national average price in the most recent marketing year for the commodity produced by the

9

"net farm income" and "net fishing income" as "net farm profit or loss, excluding payments under this part, reported to the Internal Revenue Service . . . for the tax year that most closely corresponds with the marketing year under consideration." 7 C.F.R. § 1580.102. By defining "net farm income" and "net fishing income" as income derived from both TAA-eligible and TAA-ineligible products, the agency ensured that the Congressional intent was realized - that relief would be limited to agricultural producers most in need of assistance. These definitions are not as Plaintiff claims "extra-statutory[8] limit[s] on the distribution of TAA benefits;" rather they are consistent with Congressional intent since the "regulatory and statutory framework do not

group is equal to or less than 80 percent of the average of the national average prices in the preceding 5 marketing years and [whether] increases imports of that commodity contributed importantly to the decline in price," it would certify the group as eligible for TAA. Id. Upon certification, individual producers of the certified commodity could petition the FSA to receive basic information and technical assistance, and subject to additional eligibility requirements, cash payments. Id. The additional eligibility requirements included a "certification that [the individual producers'] net farm income is less than that for the latest year in which no adjustment assistance was received." Id. at 39,481 (quoting proposed 7 C.F.R. § 1580.301(e)(4)).

After inviting comments on the proposed rule, the final rule addressed respondents' comment regarding the net income requirement. Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 50,048 (August 20, 2003). Three respondents were concerned that "producers managing diversified farms might not qualify for adjustment assistance payments due to higher earnings from sales of other commodities." Id. The FAS countered that TAA's purpose was limited to providing assistance to those producers facing "economic hardship." Id. Furthermore, the FAS emphasized that the TAA payments would be excluded from consideration when it determined whether a producer was eligible in subsequent qualifying years. Id. After consideration of respondents' comments, FAS continued to define net farm and fishing income as overall income, that is, the income derived from *all* of an individual producer's catch. To date, the FAS has not published an amendment that changes this definition. See, e.g., Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 62,731 (November 6, 2003).

[8] The court does not accept as valid Plaintiff's argument that Congress only limited TAA benefits in two instances (1) to producers earning less than $2.5 million in adjusted gross income, and (2) by progressively reducing cash payments as the producers adjusted to import competition. Plaintiff's Response at 11-12 (citing 19 U.S.C. § 2401e(a)(2)). These are explicit limits in the statute, whereas the discussion in this case focuses on the statute's grant of authority to the Secretary of Agriculture to define net farm income and net fishing income.

provide for a species specific determination." Plaintiff's Response at 12-13; Defendant's Reply at 2.

"The fair measure of [judicial] deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." Mead 533 U.S. at 226 (citing Skidmore v. Swift & Co., 323 U.S. 134,139-40, 65 S. Ct. 161, 89 L. Ed. 124 (1994)). "Considerable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer . . . ." Id. (quoting Chevron, 467 U.S. at 844). Defendant's argument that the agency's interpretation and implementation of the TAA statute is consistent with Congressional intent is supported by substantial evidence.

Applying the Mead standard, Plaintiff's claim that Agriculture unreasonably required Plaintiff to include income from fish other than Pacific salmon in his application and "[did] nothing to establish whether [Plaintiff has been] adversely affected by import competition as to the certified product" is without merit. Plaintiff's Response at 8. Agriculture was explicitly granted the authority to define "net farm" and "net fishing income" and has consistently applied its definitions when determining a producer's TAA eligibility.[9] 19 U.S.C. §2401e(a)(1)(C); 7 U.S.C. § 1580.102. Several notices prepared by the FSA and distributed to state and county

_____

[9] On one occasion, the agency has suggested that net fishing income is limited to income derived from the agricultural commodity at issue. In a letter dated October 22, 2003, the State of Washington office of the FSA stated that "to be eligible to receive cash payments for TAA [a Pacific salmon producer] must . . . [p]rovide acceptable documentation to verify [his] decline in income from commercial pacific salmon fishing for the past two marketing years." Administrative Record at 36-37. The letter, however, predates the notices clarifying the TAA program and was written by an official at the state level and not the federal level.

offices of the FSA demonstrate this consistency.[10] See, e.g., Clarifying Trade Adjustment

Assistance (TAA) Policies and Procedures, USDA FSA Notice SP-12 at 1 (November 26, 2003).

The notice and comment rulemaking process and the FSA notices setting out the TAA

guidelines indicate that Agriculture has consistently defined net farm and fishing income as

income derived from both TAA-eligible and TAA-ineligible products.  Plaintiff asserts that

because the Secretary only certified Pacific salmon, only those fish (and not *all* the fish Plaintiff

produces) should count when determining Plaintiff's eligibility for cash payments. Plaintiff's

Response at 14-15.  This argument directly contradicts the statute and regulations. See 7 U.S.C. §

1580.102; see also 19 U.S.C. § 2401e(a)(1).  Absent proof of an unreasonable interpretation of

the applicable statute and implementing regulations by Agriculture, "a reviewing court has no

business rejecting an agency's exercise of its generally conferred authority to resolve a particular

statutory ambiguity . . . " and is entitled to Chevron and Mead deference from the reviewing

court. Mead 533 U.S. at 228.

## C

### Defendant's Motion Must Be Granted

Plaintiff has failed to state a claim upon which relief may be granted.  Accepting all well-

---

[10] For example, among the frequently asked questions was whether "net fishing income [was] defined as the net income from only the approved commodity . . . [or whether] it include[s] net income from non-TAA eligible catch." Farm Service Agency, U.S. Dep't of Agriculture, Notice SP-12 at 3, Clarifying Trade Adjustment Assistance Policies & Procedures (Sept. 1, 2004).  The FSA responded that net income included net income from non-TAA eligible catch, which would be reported as net profit or loss on IRS Schedules C or C-EZ. Id.; Farm Service Agency, U.S. Dep't of Agriculture, Notice SP-5 at 8, Information Regarding Trade Adjustment Assistance for Farmers (Jan. 1, 2005); see also 7 C.F.R. § 1580.102.  This is a document which is readily available on the FSA website for any applicant to review. See http://www.fsa.usda.gov/dafp/psd/TAA.htm (visited August 10, 2005).

pleaded facts as true and viewed in the light most favorable to the Plaintiff, there are insufficient facts to support Plaintiff's claim that Agriculture's negative determination, based upon the definition of "net farm" and "net fishing" income in its regulations, is contrary to the statutory language of 19 U.S.C. § 2401e. See Conley v. Gibson, 355 U.S. 41, 45-46. (1957).

The Defendant denied Plaintiff's application for TAA benefits on the basis that his net fishing income for 2002 was higher than his net fishing income for 2001. Defendant's Motion at 8. Plaintiff challenged this determination on the grounds that his "Pacific salmon" income for 2002 was less than his "Pacific salmon" income for 2001.[11] Given that "nothing in the relevant statutes or regulations provides for a determination of [eligibility] . . . based upon earnings according to individual fish species," Agriculture acted reasonably and in accordance with law by basing its decision to deny Plaintiff's claim for benefits on his net fishing income. Defendant's Motion at 8 (emphasis in original). As a result, it does not appear "beyond a doubt" that Plaintiff is able to present facts in support of his claim.

## VI

### Conclusion

For the foregoing reasons, Defendant's Motion is GRANTED.

/s/ Evan J. Wallach
Evan. J. Wallach, Judge

Dated: October 3, 2005
New York, New York

---

[11] The court agrees with Defendant that it is irrelevant to Agriculture's determination whether Plaintiff's fishing income from *Pacific salmon* had decreased by almost 75% in 2002 as compared to 2001. Defendant's Reply at 1.

13