Slip Op. 06-27

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                          :
LARRY CABANA,                             :
                                          :
    Plaintiff,                       :
                                          :
    v.                               :    Court No. 04-00634
                                          :
UNITED STATES SECRETARY OF AGRICULTURE,   :
                                          :
    Defendant.                       :
_____:


[Plaintiff's motion for judgement upon the agency record is denied. The United States Department of Agriculture's negative determination is affirmed. Case dismissed.]


    Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP (William F. Marshall) for Larry Cabana, plaintiff.

    Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David S. Silverbrand); of counsel: Jeffrey Kahn, Office of the General Counsel, United States Department of Agriculture, for the United States Secretary of Agriculture, defendant.


    February 28, 2006


**OPINION**

    **TSOUCALAS, Senior Judge:** Plaintiff, Larry Cabana ("Cabana") moves pursuant to USCIT R. 56.1 for judgment upon the agency record. Cabana contends that the United States Secretary of Agriculture ("Secretary" or "Department") erred in determining that he was ineligible for certification to receive trade adjustment

assistance ("TAA") benefits. Specifically, Cabana asserts that he is eligible for TAA certification because his net fishing income in 2002 was less than his 2001 net fishing income. The Department responds that 19 U.S.C. § 2401e (c) grants the power to determine "net farm income" to the Secretary, and the Secretary has determined that Cabana's "net farm income" did not decrease in 2002.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 2395 (2000) <u>amended by</u> 19 U.S.C. § 2395 (Supp. II 2002).[1]

### STANDARD OF REVIEW

The Court will uphold the Secretary's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law. <u>See</u> 19 U.S.C. § 2395(b); <u>see also</u>

---

[1] Section 284(a) of the Trade Act of 1974 was amended, effective August 6, 2002, and provided this Court with jurisdiction over trade adjustment assistance matters brought by agricultural commodity producers. <u>See</u> <u>Trade Act of 2002</u>, Pub. L. No. 107-210, § 142, 116 Stat. 953 (2002). The statute states that "an agricultural commodity producer (as defined in section 2401(2) of this title) aggrieved by a determination of the Secretary of Agriculture under section 2401b . . . may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of such determination." 19 U.S.C. § 2395(a). Accordingly, the Court "shall have jurisdiction to affirm the action of the Secretary of Labor, the Secretary of Commerce, or the Secretary of Agriculture, as the case may be, or to set such action aside, in whole or in part." 19 U.S.C. § 2395(c).

Steen v. United States, 29 CIT ___, ___, 395 F. Supp. 2d 1345, 1347 (2005).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the [same] evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citations omitted).

To determine whether the Secretary's interpretation and application of 19 U.S.C. §§ 2401-2401g is "in accordance with law," the Court must undertake the two-step analysis prescribed by Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  Under the first step, the Court reviews the Department's construction of a statutory provision to determine whether "Congress has directly spoken to the precise question at issue."  Id. at 842.  "To ascertain whether Congress had an intention on the precise question at issue, [the Court] employ[s] the 'traditional tools of statutory construction.'"  Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing Chevron, 467 U.S. at 843 n.9).  "The first and foremost 'tool' to

be used is the statute's text, giving it its plain meaning. Because a statute's text is Congress' final expression of its intent, if the text answers the question, that is the end of the matter." Id. (citations omitted). Beyond the statute's text, the tools of statutory construction "include the statute's structure, canons of statutory construction, and legislative history." Id. (citations omitted); but see Floral Trade Council v. United States, 23 CIT 20, 22 n.6, 41 F. Supp. 2d 319, 323 n.6 (1999) (noting that "not all rules of statutory construction rise to the level of a canon") (citation omitted).

If, after employing the first prong of Chevron, the Court determines that the statute is silent or ambiguous with respect to the specific issue, the question for the Court becomes whether the Department's construction of the statute is permissible. See Chevron, 467 U.S. at 843. Essentially, this is an inquiry into the reasonableness of the Department's interpretation. See Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Provided the Department has acted rationally, the Court may not substitute its judgment for the agency's. See Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (holding that "a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another"); see also IPSCO, Inc. v. United States, 965 F.2d 1056, 1061 (Fed. Cir. 1992).

The "Court will sustain the determination if it is reasonable and supported by the record as a whole, including whatever fairly detracts from the substantiality of the evidence." Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1077, 699 F. Supp. 938, 942 (1988) (citations omitted).

## BACKGROUND

On October 28, 2003, the United States Department of Agriculture certified a TAA petition filed by a group of salmon fishermen from Alaska and the Puget Sound Salmon Commission of Seattle, Washington. See Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 62,766 (Nov. 6, 2003). This action involves the November 5, 2004, denial of Cabana's application to receive TAA benefits based on the aforementioned certification. See Mem. Law Supp. Pl.'s Mot. J. Upon Agency R., Rule 56.1 ("Cabana's Mem.") at 1; Def.'s Resp. Pl.'s Mot. J. Upon Agency R. ("Secretary's Resp.") at 5. On December 14, 2004, the Court received Cabana's letter seeking judicial review of the Secretary's negative determination. See Administrative Record ("Admin. R.") at 25. Subsequently, the Secretary moved to dismiss for failure to state a claim, which the Court denied in Cabana v. United States Sec'y of Agric., ("Cabana I") Slip Op. 05-93 (Aug. 1, 2005), of which familiarity is presumed.

Cabana concedes that his original request was denied because his application for certification showed that his net farm income in 2002 was more than that of 2001. See Cabana I, Slip Op. 05-93 at 4. Cabana contends that 19 U.S.C. § 2401e does not define the term "net farm income." See Cabana's Mem. at 5-6. Cabana asserts, however, that the Secretary's definition of "net farm income" in 7 C.F.R. § 1580.102 is contrary to the statutory language. See id. at 6. Cabana argues that if Congress intended to base eligibility for TAA on income, then it would not have included the qualifying term "farm income" in 19 U.S.C. § 2401e(a)(1)(C). See id. Cabana maintains that the statutory language indicates Congress intended to grant TAA benefits to agricultural producers whose income from farming decreased because of competing imported agricultural commodities. See id. at 3. Cabana states that although his total adjusted gross income increased in 2002, his fishing income in 2001 and 2002 was $31,663 and $31,195, respectively. See id. at 6 (emphasis added). Cabana asserts that the increase in his adjusted gross income in 2002 was a result of an increase in non-fishing business income. See id. at 5. Therefore, Cabana argues that he satisfies the decreased income requirement in 19 U.S.C. § 2401e and thus is entitled to TAA benefits. See id. at 6.

The Secretary responds that its interpretation and application of 19 U.S.C. § 2401e is in accordance with law, and is subject to

the standard of review set forth in <u>Chevron</u>. <u>See</u> Secretary's Resp. at 7. Citing <u>Chevron</u>, the Secretary further argues that its regulations define "net farm" and "net fishing" income pursuant to 19 U.S.C. § 2401e. <u>See</u> <u>id.</u> at 16. The Secretary stresses that its regulations base net farming and fishing income on reported income to the Internal Revenue Service ("IRS"). <u>See</u> <u>id.</u> at 14 (quoting 7 C.F.R. § 1580.102). Cabana's IRS reported income indicates a higher income in 2002 than in 2001. <u>See</u> Admin. R. at 17-18. As such, the Secretary concludes that its determination that Cabana does not qualify for TAA benefits is supported by substantial evidence on the record. <u>See</u> Secretary's Resp. at 17-18.

## DISCUSSION

To receive TAA benefits, an applicant engaged in the business of farming or fishing must report that "net farm income (as determined by the Secretary [of Agriculture]) for the most recent year is less than the producer's net farm income for the latest year in which no adjustment assistance was received by the producer . . . ." 19 U.S.C. § 2401e(a)(1)(C) (Supp. II 2002). When Congress has "explicitly left a gap for the agency to fill," the agency's own regulations are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron</u>, 467 U.S. at 843-44. As Congress has made it clear in 19 U.S.C. § 2401e (a)(1)(C) that "net farm income" shall be determined

by the Secretary, the statutory language precludes any need to go beyond the plain meaning of the statute in order to discern Congressional intent. See Steen, 29 CIT at ___, 395 F. Supp. 2d at 1349-50.

"Net farm" and "net fishing" incomes are used by the Secretary to identify producers who have been harmed by import competition for the purpose of determining TAA applications. See 19 U.S.C. § 2401e(a)(1). The Secretary has defined "net farm" and "net fishing" income as follows in its regulations:

> Net farm income means net farm profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration.

> Net fishing income means net profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration.

7 C.F.R. § 1580.102 (Nov. 1, 2004).[2] The Secretary implemented 19 U.S.C. § 2401e in accordance with Congressional intent. See

---

[2] The Secretary enacted an amended version of 7 C.F.R. § 1580.102 on November 1, 2004. See Trade Adjustment Assistance for Farmers, 69 Fed. Reg. 63,317 (Nov. 1, 2004). The amended regulation applies here because the Secretary denied Cabana's application on November 5, 2004, and the Court received Cabana's letter seeking judicial review of the Secretary's negative determination on December 14, 2004. See Admin. R. at 22 & 25.

generally Steen, 29 CIT at ___, 395 F. Supp. 2d at 1349-51 (discussing the legislative history of 19 U.S.C. §§ 2401-2401g). "By defining 'net farm income' and 'net fishing income' as income derived from both TAA-eligible and TAA-ineligible products, the agency ensured that Congressional intent was realized — that relief would be limited to agricultural producers most in need of assistance." Id. at ___, 395 F. Supp. 2d at 1351. The Secretary states that it denied TAA certification to Cabana because Cabana's "net fishing" income rose between 2001 and 2002, as Cabana himself reported in Schedule C of his IRS tax returns. See Secretary's Resp. at 17-18; Admin. R. at 17-18.

Cabana argues that he satisfied the income requirements of 19 U.S.C. § 2401e as his "net fishing" income was lower in 2002 than in 2001. See Cabana's Mem. at 6. As support, Cabana points to a letter drafted by his accountant. See Admin. R. at 26. The letter, however, was dated November 19, 2004, more than thirty days after the decision was made by the Department on October 5, 2004. See Admin. R. at 22 & 26. The timing of the letter's submission to the Department does not alter the fact that the Secretary has the Congressionally delegated authority to define the term "net farm

income."[3]  See 19 U.S.C. § 2401e.  The Department's definition of "net farm" and "net fishing" income relies on information reported to the IRS.  See 7 C.F.R. § 1580.102.  Cabana's 2002 "net fishing" income as declared on Schedule C of his IRS 1040 form was $37,331, whereas his IRS declared fishing income for 2001 was $35,759, almost two thousand dollars lower.  See Admin. R. at 17-18.  Cabana did not have a "net fishing" income decline between 2001 and 2002.  See id.  Thus, the Secretary correctly determined that Cabana is ineligible to receive TAA benefits.

### CONCLUSION

The Court finds that the Secretary's determination to deny Cabana's application for certification for TAA benefits is supported by substantial evidence on the record and is otherwise in

---

[3]    During oral arguments, Cabana stated that Congress had intended TAA benefits to be remedial in nature.  As such, Cabana argues that discounting the letter simply due to its submission date would not conform to Congress's remedial aim.  However, the Secretary has not argued that the letter should be discounted simply due to its date of submission.  Rather, credence was not given to the letter since it contained no information whatsoever as to what Cabana viewed as being non-fishing income.  Additionally, the Court notes that the record is absent of any explanation as to what Cabana meant by non-fishing income.  Furthermore, the Secretary has the authority to calculate net farm income.  See 19 U.S.C. § 2401e.  The Secretary relies on IRS reported information when calculating net farm and net fishing income.  See 7 C.F.R. § 1580.102.

accordance with law.  Accordingly, Cabana's motion for judgement upon the agency record is denied and the Secretary's negative determination is affirmed.  Judgment will be entered accordingly.


                                          /s/ Nicholas Tsoucalas
                                          NICHOLAS TSOUCALAS
                                          SENIOR JUDGE


Dated:     February 28, 2006
           New York, New York